E. O. LOCKARD and Willie Josephine
Lockard, Appellants,

v.

AMERICAN FIDELITY FIRE INSURANCE
COMPANY, Appellee.

No. 8187.

Court of Civil Appeals of Texas,
Amarillo.

Dec. 27, 1971.

Rehearing Denied Jan. 17, 1972.

Herbert C. Martin, Amarillo, for appellants.

Culton, Morgan, Britain & White (Leslie H. Williams, Jr.), Amarillo, for appellee:

JOY, Justice.

This is an appeal from a trial court judgment denying plaintiff-appellant, a purchaser of a mobile home, recovery on a suit based on a theory of subrogation under an insurance policy naming the original owner and the mortgagee the "loss payees."

Affirmed.

In 1964, John V. Barry, III, purchased from Scottsdale Discount Corporation[1] a mobile home on a retail installment contract for $4,250.33 principal, $475.62 in insurance, $2.25 in "official fees," and $2,316.57 "credit charge," for a total installment purchase price of $7,044.27. The contract provided that fire, theft, and combined additional insurance coverage was to be procured by the buyer, seller or seller's assignee, and that the buyer assigned to seller all moneys not in excess of the unpaid balance which might become payable

---

1. It was stipulated by counsel that "Scottsdale Discount Corporation," the named seller in this particular contract, was one and the same corporation as Schenec- tady Discount Corporation, the mortgagee through whom plaintiff-appellant sought to recover as subrogee.

under such insurance. Pursuant to the contract provisions above, a mobile home insurance policy with American Fidelity Fire Insurance Company was procured by the parties with the named insured listed as Mr. Barry. The Loss Payee clause in the policy reads as follows:

> "*Loss Payee*: Any loss hereunder is payable as interest may appear to the insured and Scottsdale Discount Corporation."

In 1968 Barry sold the mobile home by bill of sale for $100 to appellants, E. O. and Willie Josephine Lockard, who took the home expressly "subject to the indebtedness due Scottsdale." The unpaid balance on the note from Scottsdale Discount Corporation to Barry was set forth in the bill of sale from Barry to the appellants as $2,770.00. Neither the appellee, American Fidelity Fire Insurance Company, nor the mortgagee, Scottsdale Discount Corporation, was notified of the sale, until after the loss occurred. Appellants took possession of the mobile home in 1968 and made 22 payments of $84.00 each to the mortgagee (a total of $1,848.00) in the name of the insured, Barry, until the mobile home was destroyed by a tornado on April 18, 1970. Appellants never attempted to have the insurance policy assigned to them under provisions of the policy allowing such assignment; the language of the bill of sale by which the sale from Barry to the appellants was carried out clearly indicates that appellants did not assume Barry's obligation to Scottsdale; appellant Mrs. Lockard testified that she and her husband never intended to assume responsibility for any of the debt which Barry owed the mortgagee; further, Mrs. Lockard testified that she signed Barry's name to letters which she mailed to the insurance company for the purpose of collecting insurance on the mobile home, although admittedly the insurance policy was never transferred or assigned to Lockard.

When the mobile home was destroyed, the balance due on the note from Barry to Scottsdale was $959.05. American Fidelity Fire Insurance Company paid Scottsdale this balance due under the terms of the insurance policy which had been issued in 1964 to Barry as the insured and Barry and Scottsdale as the loss payees.

Appellants filed this suit as intervenors in a suit styled "John V. Barry, III, Plaintiff v. American Fidelity Fire Insurance Company, Defendant, E. O. Lockard and Willie Josephine Lockard, Intervenors." Appellants' petition alleged that they had paid $1,848.00 to Scottsdale under the above-mentioned purchase agreement, and that appellants were therefore subrogated to all of the rights of Scottsdale Discount Corporation. It was, and continues to be, appellants' contention that as subrogees to Scottsdale, the mortgagee, appellants are entitled to collect from American Fidelity Fire Insurance Company on the policy issued by that company the money they paid under the purchase agreement.

The trial court rendered judgment that appellants take nothing by their suit against the defendant.

The insurance policy, upon which appellants seek to recover, limits the payees to Barry, the named insured, and Scottsdale, the mortgagee, "as interest may appear to the insured and Scottsdale."

Appellants, having elected to remain uninsured by not securing an assignment of the seller's policy and, further, by not purchasing other insurance, are in the position of any other party that suffers the loss of property without a means of recompense. The protection afforded the mortgagee under the existing policy was limited to the balance of the loan at the time of loss. Therefore, assuming arguendo that appellants were subrogated to the rights of the mortgagee, those rights would not extend to the amounts paid by appellants as the party for whose benefit subrogation is invoked acquires no greater rights than those of the party for whom he is substituted. Vol. 11, Appleman, Insurance Law and Practice, § 6505 at 301 (1944 Ed.). Subrogation has its inception by two meth-

**288**

ods: (1) "legal," which arises by implication in equity to prevent fraud or injustice, and (2) "conventional," which arises by contract. 53 Tex.Jur.2d, Subrogation, § 3. The facts of this case present no contractual rights in appellants, and the record reflects nothing by way of fraud or injustice by reason of appellants having elected to acquire and own property without protection from loss through the means of insurance.

The judgment of the trial court is affirmed.